**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Case No.: 2:12-CR-004-APG-GWF |
| | ) |
| vs. | ) **ORDER DENYING DEFENDANT** |
| | ) **FREDERICK THOMAS'S MOTION TO** |
| | ) **DISMISS** |
| FREDERICK THOMAS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Defendant Frederick Thomas is charged in the Indictment with Participating in a Racketeer Influenced Corrupt Organization ("RICO") (Count 1) and Conspiracy to Engage in a Racketeer Influenced Corrupt Organization (Count 2). (Dkt. #83 at pp. 26–41.)  Thomas filed a Motion to Dismiss (Dkt. #677) asserting, among other things, that the Indictment fails to properly charge him with each element of the offenses.  Thomas also asserts that the RICO charge is improper because the relevant statute, 18 U.S.C. § 1962(c), does not allow for prosecution of crimes that occurred primarily overseas.

### 1.   The sufficiency of the Indictment.

Federal Rule of Criminal Procedure 7(c)(1) requires that "[t]he indictment or information shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  I must first determine whether the indictment sets forth all elements of each offense and apprises the defendant of the charges so that he can prepare a defense. *United States v. Blandford*, 33 F.3d 685, 705 (6th Cir. 1994).  I also must determine whether the indictment is sufficiently specific to protect the defendant against double jeopardy in a subsequent proceeding, if he is charged with the same crime based on the same facts. *Id*.  An "indictment setting forth

the elements of the offense is generally sufficient." *United States v. Fernandez*, 388 F.3d 1199, 1220 (9th Cir. 2004); *see also United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) ("In the Ninth Circuit, '[t]he use of a 'bare bones' information—that is one employing the statutory language alone—is quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished.'") (quoting *United States v. Crow*, 824 F.2d 761, 762 (9th Cir. 1987)).

These standards also apply to RICO prosecutions.  As a general rule, an indictment charging either a substantive RICO violation or a RICO conspiracy is sufficient when it: (1) tracks the statutory language as to all the essential elements of the charged offenses, "(2) 'fairly informs a defendant of the charge against which he must defend' and (3) 'enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Titterington*, 374 F.3d 453, 456 (6th Cir. 2004) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *accord Fernandez*, 388 F.3d at 1217–18; *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993); *United States v. Glecier*, 923 F.2d 496, 499–500 (7th Cir. 1991). Accordingly, allegations of evidentiary details are unnecessary. *United States v. Nabors*, 45 F.3d 238, 240-41 (8th Cir. 1995); *United States v. Cauble*, 706 F.2d 1322, 1334 (5th Cir. 1983); *United States v. Diecidue*, 603 F.2d 535, 547 (5th Cir. 1979).  The indictment need not negate exceptions or defenses to the charged offense. *Titterington*, 374 F.3d at 456.

Pretrial review of the sufficiency of an indictment is limited to a determination of whether "the facts alleged in the indictment, if accepted as entirely true, state the elements of an offense and could result in a guilty verdict. . . . Generally speaking, it is a narrow, limited analysis geared only towards ensuring that legally deficient charges do not go to a jury." *United States v. Bergrin*, 650 F.3d 257, 269–70 (3rd Cir. 2011).

In considering a pretrial motion to dismiss an indictment for failure to state an offense, a court must accept the truth of the allegations in the indictment. *See United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996).  In analyzing whether an offense has been properly charged, a court is bound by the four corners of the indictment. *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002); *see Jensen*, 93 F.3d at 669.  "The indictment either states an offense or it doesn't.  There is no need for an evidentiary hearing." *United States v. Boren*, 278 F.3d at 914.

In his motion, Mr. Thomas argues that "the defendants charged in this Indictment were not partners in an overarching scheme, instead, each of the charged members and vend[o]rs were acting solely for their own benefit," and "[e]very member of the group was looking out solely for their own interests, and cannot be said to have furthered a common group objective." (Dkt. #677 at 19.)  These allegations contradict the Indictment's detailed description of the criminal enterprise, and summarize the evidence that Mr. Thomas would offer at trial to rebut the Government's presentation.  His arguments are more properly addressed to me in a motion for a judgment of acquittal, or to the jury in closing arguments.  I cannot consider his arguments in a pretrial motion, before the presentation of evidence at trial.

With regard to Mr. Thomas's argument about the substance of the RICO charge, in *Reves v. Ernst & Young* the United States Supreme Court held "that 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' [under 18 U.S.C.] § 1962(c), one must participate in the operation or management of the enterprise itself." 507 U.S. 170, 185 (1993). Here, the Indictment alleges that Mr. Thomas participated

> in the enterprise, acting under the direction of and in concert with other members of the enterprise in carrying out unlawful and other activities in furtherance of the conduct of the enterprise's affairs.  Thomas's criminal activities in furtherance of the enterprise include, but are not limited to, unlawful transfer and use of a means of identification, and possession of fifteen (15) or more counterfeit and unauthorized access devices.

(Dkt. #83 at 25:8–14.)  The Indictment sufficiently charges Mr. Thomas with offenses.

### 2.   The extraterritorial application of the RICO charge

Mr. Thomas also alleges that "Carder.su was a website hosted on servers stationed overseas, in Russia. . . ." (Dkt. #677 at 20:3–4.)  Thus, he argues, this prosecution is an improper extraterritorial application of the RICO statute.  This argument is ill-founded.

First, the Indictment makes no reference to the physical location of the Carder.su servers.  Mr. Thomas anticipates proving at trial that the servers were located outside of the United States.  But I must examine the allegations within the four corners of the Indictment, not what Mr. Thomas anticipates proving at trial. *Boren*, 278 F.3d at 914; *Jensen*, 93 F.3d at 669.  Counts One and Two of the Indictment do not allege where the servers were located.  Rather, they allege a domestic application of the RICO statute.

More importantly, the location of the servers—even if they are in Russia—is not dispositive of this issue.  In *United States v. Xu*,  the Ninth Circuit considered the extraterritorial application of the RICO statute to Chinese-national defendants. 706 F.3d 965 (9th Cir. 2013).  Noting that courts have disagreed whether the focus of the RICO statute is on the "enterprise" or on "the racketeering activity" (*id*. at 975), the Ninth Circuit chose the latter focus:

> Given th[e] express legislative intent to punish patterns of organized criminal activity in the United States, it is highly unlikely that Congress was unconcerned with the actions of foreign enterprises where those actions violated the laws of this country while the defendants were in this country.  Thus, to determine whether Defendants' count one convictions are within RICO's ambit, we look at the pattern of Defendants' racketeering activity taken as a whole.

*Id.* at 978 (citation omitted).

The Ninth Circuit then analyzed the two patterns of racketeering activity alleged in the Indictment.  The first involved a scheme to defraud the Bank of China and divert funds to Hong Kong.  The court found that this activity lacked contacts with the United States and thus was insufficient to support extraterritorial application of RICO.  The second pattern involved using

those funds to travel to the United States, and creating fraudulent marriage licenses, passports, and visas.  These RICO predicate acts were violations of United States immigration laws.  The Ninth Circuit held that because this immigration fraud had a connection to the United States and was important to the success of the enterprise, the defendants' conduct fell "squarely within RICO's definition of racketeering activity." *Id*. at 979.  The subject activities need not be planned in the United States, but must be "executed and perpetuated in the United States." *Id.*

In the present case, the Indictment alleges substantial racketeering activity connected to the United States.  It alleges that members and associates of the Carder.su organization operated throughout the United States; that vendors manufactured counterfeit driver's licenses from several states; that enterprise members trafficked in device-making equipment used in the production of counterfeit access devices issued, owned, managed, and controlled by American financial institutions; and that members possessed unauthorized access devices issued, owned, managed, and controlled by American financial institutions.  While members and associates of the enterprise used the Internet to engage in their criminal conduct (regardless of the location of the servers), the RICO counts are based upon violations of federal law for offenses that occurred in the United States.  The Indictment alleges a proper application of the RICO statute.

For the foregoing reasons, Defendant Frederick Thomas's motion to dismiss is DENIED.

Dated this 1st day of May, 2014.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

5